UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| NELSON VIERA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 11-10220-NMG |
| ) | |
| LUIS SPENCER, et al., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

January 28, 2013

SOROKIN, C.M.J.

Currently pending are the Motions for Summary Judgment of Defendants Thomas

Groblewski, Mary Connolly, Ellen Kurtz and Maureen Atkins (Docket # 41) and Defendant Luis

Spencer (Docket # 57).  For the following reasons, I RECOMMEND that the motions be

ALLOWED.

I.      PROCEDURAL AND FACTUAL HISTORY

On January 31, 2011, the Plaintiff Nelson Viera (an incarcerated inmate) brought suit

pursuant to 42 U.S.C. § 1983 against Defendants Groblewski, Connolly, Kurtz and Atkins

(employees of the Department of Correction's (DOC's) contracted health services provider),

alleging deliberate indifference to his medical needs.  Docket # 1.  He also sued three

Department of Corrections officials.  Id.  By Order dated February 3, 2012, the Court dismissed

Viera's money damages claims directed against the DOC defendants, but permitted Viera to

1

proceed with a claim seeking injunctive relief against Spencer barring the continuation of an alleged DOC policy prohibiting the prescription of certain medications.  Docket # 37.

On May 3, 2010, Viera was diagnosed with fibromyalgia during a rheumatology consult at the Lemuel Shattuck Hospital in Jamaica Plain.  Docket # 44-1 at 5-6.  Kenneth M. Pariser, M.D. reported that Viera had a ten-month history of generalized aches and pains involving his neck, upper back and his left (more than his right) shoulder.  Id. at 5.  Dr. Pariser concluded, "I think this patient has fibromyalgia . . .  In addition to his fibromyalgia, I am concerned about his left shoulder.  This appears to be intermittently subluxating" (i.e., dislocating).  Id. at 6.  Dr. Pariser recommended that Viera see an orthopedist about his shoulder, and that he begin treatment with Paxil.  Id.  He further recommended that if he did not respond to the initial dosage of Paxil, that his dosage be gradually increased every three weeks, and that if he did not respond thereafter, that a different SSRI medication (such as Effexor) be tried.  Id.  He concluded, "[i]f he does not respond to that, then a trial of one of the approved medications for fibromyalgia would be recommended."  Id.

Paxil was administered to Viera between May 17, 2010 and August 19, 2010. Docket # 44-2 at 2; Docket # 44-1.[1]  An August 16, 2010 Sick Call Request Form includes a notation that Viera reported that he had stopped taking Paxil because he felt that it was not helping, and noted a plan to try Elavil.  Docket # 44-2 at 4.  A September 22, 2010 progress note noted that Viera, "[t]ried Paxil x 3 wk; which gave him insomnia – it did help [with] the pain, but

---

[1]  The exhibit at Docket # 44-1 purports to be Viera's medication history.  The exhibits offered by the Defendants lack an authenticating affidavit, and many of the pages of the medication history lack the patient's name, making the exhibit not particularly probative.  In any event, Viera appears not to contest his medication history as described by the Defendants.

made him hyper." Id. at 6.  The progress note also indicated that Viera "tried Elavil, which gave him blurry vision."  Id.

On March 16, 2011, Viera was placed on Lyrica.  Docket No. 44-2 at 75.  On June 11, 2011, Viera refused to take Lyrica, stating that Lyrica caused "too many bad side effects," including dizziness and blurred vision.  Id.  On July 22, 2011, Viera was restarted on Elavil at his request.  Docket #44-2 at 8.  On March 12, 2012, Viera had a second rheumatology consultation with Dr. Pariser.  Docket # 44-3 at 33-34.  Dr. Pariser stated in his report that it appeared to him that Viera had fibromyalgia and that he should continue taking Effexor in the morning, taking Elavil and Remeron at night, and that he should add Gabapentin (generic Neurontin) at night, gradually increasing the dosage.  Id.  Ten days later, Nurse Practitioner Bart Nelson requested Neurontin from the pharmacy for Viera.  Docket #44-3 at 36.  The record is silent as to subsequent developments.

Viera states in his affidavit that his medications have proven to be ineffective in alleviating his pain.  Docket #51 at ¶ 7.  He also asserts that the DOC has an unwritten policy prohibiting the prescription of narcotic drugs such as the ones he now wants to treat his fibromyalgia (namely, Cymbalta or Savella).  Id. at ¶ 9; Docket # 52 at 5.

With respect to Viera's shoulder, Bart Nelson (a nurse practitioner employed by the DOC's contracted health services provider) affirms that he believes that Viera's left shoulder pain is caused by his fibromyalgia, and not by a separate injury.  Docket # 44-2 at 15.  There is no implication in the notes of the consulting rheumatologist, Dr. Pariser, that surgery on Viera's shoulder is indicated.  See Docket # 44-1 at 5-6; Docket # 44-3 at 33-34.  On August 31, 2007, April 2, 2008, and May 5, 2009, Viera received x-rays on his left shoulder that revealed no

fractures, dislocations, or significant abnormalities. Docket # 44-2 at 19-21.  In June and July of

2009, Viera was evaluated by a physical therapist and was prescribed exercises for his shoulder.

Docket # 44-2 at 23, 25-26.

II.    DISCUSSION

Applicable Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a).  Once a party has properly supported its motion for summary judgment, the burden shifts

to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but

must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics

Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 256 (1986)).  Moreover, the Court is "obliged to []view the record in the light most

favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving

party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Even so, the

Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation."

Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (quotation omitted).

Deliberate Indifference Claims Against the Medical Defendants

In order to prevail against the medical defendants, Viera must adduce evidence sufficient

to support an inference that one or more of the defendants was deliberately indifferent to his

serious medical need(s), constituting "unnecessary and wanton infliction of pain" in violation of

the Eighth Amendment.  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citing Gregg v. Georgia,

4

428 U.S. 123, 173 (1976)).[1]  In order to demonstrate a deprivation of care that violates the Eighth Amendment, a mental state of subjective recklessness must be shown.  Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Battista v. Clarke, 645 F.3d 449, 454 (1st Cir. 2011); Kosilek v. Spencer, 2012 WL 3799660 (D. Mass. Sept. 4, 2012) (Wolf, J.) (Kosilek II) at *11.  Viera must establish that a defendant " knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that the substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Where a prison official acts reasonably and in good faith, he cannot be liable for cruel and unusual punishment.  Id. at 845.  An accident or a showing of mere negligence is insufficient to establish Eighth Amendment liability.  Estelle, 429 U.S. at 104.

Finally, although an inmate is entitled to adequate medical care, he is not entitled to the care of his choice. United States v. DeCologero, 821 F. 2d 39, 42 (1st Cir. 1987) (prisoner with back problem denied preferred medical treatment, including narcotic drugs).  "Though it is plain that an inmate deserves *adequate* medical care, he cannot insist that his institutional host provide him with the most sophisticated care that money can buy."  Id. (emphasis in original).  In assessing the standard for adequate medical care, deference should be given to the medical decisions of medical professionals about the appropriate course of treatment.  Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").  Decisions of medical professionals that are "within the realm of reason

---

[1] A serious medical need typically "is a need that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity of a doctor's attention." Mahn v. Plymouth Co. House of Corr., 64 F.3d 14, 18 (1st Cir. 1995). The Defendants do not dispute that Viera has a serious medical need.

and made in good faith" likewise do not constitute deliberate indifference.  Battista v. Clarke,

645 F.3d 449, 454 (1st Cir. 2011) (citing Farmer, 511 U.S. at 844-45).

On the record before the Court, Viera has failed to adduce evidence sufficient to support

a finding of deliberate indifference.  The undisputed record reveals regular ongoing treatment

pursuant to the recommendations of a consulting outside rheumatologist.  The careful step-by-

step treatment plan outlined by Dr. Pariser in May, 2010 (see Docket # 44-1 at 5-6) has generally

been followed.  Whether the treatment Viera has received constitutes the best possible treatment,

or even the only reasonable course of medical treatment, is not before the Court.  The

Defendants have provided Viera with regular ongoing medical treatment pursuant to the

directions of a doctor of the appropriate medical speciality, with adjustments to the course of

treatment over time in light of side effects and treatment outcomes reported by Viera.  In

addition, Viera has submitted no evidence whatsoever of bad faith and no evidence from a

medical expert that the treatment he has received even deviated from the standard of care, let

alone qualifies as deliberate indifference.  Viera's sworn affidavit that he remains in constant

pain – while relevant – is insufficient on this record to establish a triable issue of fact as to

deliberate indifference.

Viera also alleges that the DOC has a blanket policy of denying narcotic drugs to inmates

and that Defendant Kurtz told him that the prison does not prescribe certain drugs indicated for

fibromyalgia because of their high cost.  Docket # 50 at ¶¶ 23-24.  Viera has not offered any

evidence of the existence of a blanket policy against prescribing narcotic medications other than

his own affirmation that such an "unwritten" policy exists.  See Docket # 52 at 4 (citing Viera's

affidavit, Docket # 51 at ¶¶ 9-10).  Although at the summary judgment stage, this Court views

the record in the light most favorable the nonmoving party, the Court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d at 14. Viera's assertion that such an unwritten policy exists is just such a statement. Moreover, the DOC submits an affidavit from Lawrence Weiner, the DOC's Assistant Deputy Commissioner of Clinical Services, in which Weiner disclaims the existence of such a policy and asserts that no DOC employee has any control over the type of medication prescribed to an inmate-patient and that narcotic medications may be prescribed when deemed appropriate by medical professionals. Docket #58-1 at ¶¶ 10, 17. Moreover, Weiner further affirms that the two medications Viera wishes to take (Cymbalta and Savella) are not even considered narcotics, and would in any event be available to Viera in the event that a physician requested them according to protocol and the request was approved by the medical director. Id. at ¶¶ 15-17. In any event, Viera has not established that the policy he alleges caused him to suffer a denial of treatment.

III.    CONCLUSION

Two other issues warrant brief discussion. First, I have not reached the Defendants' assertion that Viera has failed to properly follow the applicable medical grievance procedures in light of my recommended resolution on the merits. Second, Viera asserts in passing that a lack of discovery should preclude the entry of summary judgment. Viera has not sought deferral of consideration of the Defendants' motion pursuant to Fed. R. Civ. P. 56(d), nor on the present record would such a request bear consideration.

Accordingly, I RECOMMEND that the Court ALLOW the medical defendants' motion for summary judgment (Docket # 41). Likewise, because I recommend summary judgment on

the underlying Eighth Amendment claim, the claim for injunctive relief against Defendant Spencer necessarily fails, and I FURTHER RECOMMEND that the Court ALLOW the Motion for Summary Judgment of Defendant Spencer (Docket # 57).[2]


_____/s / Leo T. Sorokin_____
Leo T. Sorokin
Chief United States Magistrate Judge

---

[2] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).